# NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## NO. 2022 CA 0005

## MICHAEL DRAGO

## VERSUS

## MARK WILKS AND INDUSTRIAL MACHINE WORKS, INC.

Judgment Rendered: **DEC 1 5 2022**

\* \* \* \* \*

**APPEALED FROM THE NINETEENTH JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER 631737**

**HONORABLE RONALD R. JOHNSON, JUDGE PRESIDING**

\* \* \* \* \*

T. Michael Murphy
G. Steven Duplechain
Baton Rouge, Louisiana

Attorneys for Plaintiff-Appellant
Michael Drago


Travis L. Bourgeois
Karl H. Schmid
Stephen T. Perkins
New Orleans, Louisiana

Attorneys for Defendants-Appellees
Mark Wilks and Industrial
Machine Works, Inc.

\* \* \* \* \*

BEFORE: McDONALD, McCLENDON, AND HOLDRIDGE, JJ.

Holdridge J. concurs

**McDONALD, J.**

In this case, the trial court issued two judgments. The first judgment granted the defendants' peremptory exceptions raising the objections of prescription and/or peremption and dismissed plaintiff's claims with prejudice. The second judgment denied the plaintiff's motion for partial summary judgment. After review, the first judgment is affirmed in part and reversed in part, the second judgment is found moot, and the case is remanded.

## FACTS AND PROCEDURAL HISTORY

The suit arose over a dispute concerning the ownership of Industrial Machine Works, Inc. (IMW). In 1999, Douglas A. Barton, Barry Longheed, Blaine Lee Adams, and Michael Drago started IMW together. Each partner owned 25 percent of the corporation. Stock certificates were never issued for the corporation. After a series of buyouts, by the year 2002, Mr. Adams and Mark Wilks were each 50 percent owners of IMW according to IMW's records.

On July 2, 2014, Mr. Drago filed suit against Mr. Wilks and IMW, maintaining that he still owned 25 percent of IMW, and that he was owed past dividends. Mr. Drago asked, in part, for a declaratory judgment that he was a 25 percent owner of IMW, for past dividends, and for a writ of mandamus directing IMW and Mr. Wilks to issue shares of stock to Mr. Drago equal to his 25 percent ownership of the company. He also asked that Mr. Wilks and IMW provide him with all of the books and accounting records of IMW since its inception.

Mr. Wilks and IMW answered the petition, maintaining that Mr. Wilks had purchased Mr. Drago's 25 percent interest in IMW. Mr. Wilks and IMW filed peremptory exceptions raising the objections of no cause of action, prescription, and peremption, and dilatory exceptions raising the objections of vagueness and ambiguity. The district court denied the peremptory exceptions raising the objections of no cause of action and the dilatory exceptions raising the objections of

2

vagueness, ambiguity, and non-conformity with La. C.C.P. art. 891. The district court deferred ruling on the exceptions raising the objections of prescription and peremption without prejudice to their renewal following completion of discovery.

In 2021, discovery was concluded and the case was set for trial. Mr. Wilks and IMW renewed their peremptory exceptions raising the objections of prescription and peremption. Mr. Drago filed a motion for partial summary judgment asking that the district court declare that he still was a 25 percent owner of IMW. On September 24, 2021, the district court rendered two judgments: the first judgment granted the peremptory exceptions raising the objections of prescription and/or peremption and dismissed Mr. Drago's claims with prejudice, and the second judgment denied Mr. Drago's motion for partial summary judgment.[1] Mr. Drago appealed the judgments.

## THE APPEAL

On appeal, Mr. Drago maintains that the district court erred in granting the peremptory exceptions raising the objections of prescription and/or peremption, erred in denying his claim for a declaratory judgment, and erred in denying his motion for partial summary judgment.

We first address the granting of the peremptory exceptions raising the objections of prescription and/or peremption. When evidence is introduced at the hearing on a peremptory exception raising the objection of prescription, the trial court's findings are reviewed under the manifest error-clearly wrong standard of review. **Stevens v. St. Tammany Parish Gov't.,** 2019-1555 (La. App. 1 Cir. 4/8/21), 322 So.3d 1268, 1279-1280.

Louisiana Revised Statutes 12:1502 provides in part:

A. The provisions of this Section shall apply to all business organizations formed under the laws of this state and shall be applicable

---

[1] We note that the judgment grants the peremptory exception raising the objection of prescription and/or peremption. It further states "plaintiff's claims are dismissed as time-barred by La. R.S. 12:1502 or, alternatively, as time-barred by acquisitive prescription pursuant to Louisiana Civil Code article 3491[.]" We note this statement appears to encompass the reasons for judgment rather than the judgment itself. However, as the judgment grants the peremptory exception raising the objection of prescription and/or peremption and dismisses the plaintiff's claims, this is a final judgment. See La. C.C.P. art. 1841.

3

to actions against any officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated. The provisions of this Section shall not apply to actions governed by R.S. 12:1-622, 1-833, 1-1407, or 1328(C).

B. The term "business organization" includes any entity formed under the laws of this state engaged in any trade, occupation, profession, or other commercial activity including but not limited to professions licensed by a state or other governmental agency. This Section shall apply without limitation to corporations, incorporated or unincorporated associations, partnerships, limited liability partnerships, partnerships in commendam, limited liability companies, or cooperative associations or other entities formed under the laws of this state.

C. No action for damages against any person described in Subsection A of this Section for an unlawful distribution, return of an unlawful distribution, or for breach of fiduciary duty, including without limitation an action for gross negligence, but excluding any action covered by the provisions of Subsection D of this Section, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act, omission, or neglect.

D. No action for damages against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within two years from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act or omission.

E. The time limitations provided in this Section shall not be subject to suspension on any grounds or interruption except by timely suit filed in a court of competent jurisdiction and proper venue.

Louisiana Revised Statutes 12:1502(C) provides a prescriptive period of one year from the date of the alleged act, omission, or neglect is discovered or should have been discovered, but in no event shall an action covered by the provisions of this subsection be brought more than three years from the date of the alleged act, omission, or neglect. The time limits shall not be subject to suspension on any

4

grounds or interruption except by timely suit filed in a court of competent jurisdiction and proper venue. La. R.S. 12:1502(E).

Louisiana Revised Statutes 12:1502 has been classified as a hybrid liberative prescriptive statute. See **Wooley v. Lucksinger,** 2006-1140 (La. App. 1 Cir. 12/30/08), 14 So.3d 311, 462, rev'd on other grounds, 2009-0571 (La. 4/1/11), 61 So.3d 507. This classification recognizes that the statute has been expressly identified by the legislature as a prescriptive statute that is conditioned by certain peremptive attributes-in particular, the inability of claims asserted thereunder to be subject to interruption and suspension. **Hill v. TMR Exploration, Inc.,** 2016-0566 (La. App. 1 Cir. 6/13/17) 223 So.3d 556, 562-563, writ denied, 2017-1163 (La. 10/27/17), 228 So.3d 1227.

Evidence was presented at the hearing regarding a sale in 2000 by Mr. Drago of his ownership interest in IMW to Mr. Wilks. In 1999, Mr. Drago received a Form K-1[2] from IMW and was listed on IMW's Form 1065[3] for IMW's income tax return. After the 1999 tax year, Mr. Drago was not listed on any of IMW's paperwork and he no longer received a Form K-1 from IMW. Mr. Wilks testified that he purchased Mr. Drago's ownership in IMW in 2000 and that he received a Form K-1 from IMW for every tax year thereafter. Mr. Drago stipulated that his name did not appear in the corporate records of the company and he was not a shareholder in the company.

Mr. Adams, an owner and Vice President of IMW, testified that Mr. Drago had an ownership in IMW in 1999, but that Mr. Drago sold his stock to Mr. Wilks in 2000. Mr. Adams testified that after that time, Mr. Drago had no involvement in IMW as an owner. Mr. Adams testified that after the year 2000, Mr. Drago did not receive a Form K-1 from IMW, was not listed on the IMW's Form 1065, and was not listed on the state tax returns or any other corporate documents. Mr. Adams

---

[2] A Form K-1 is used to report the owner's share of the company's income, deductions, credits, etc. for income tax purposes.
[3] A Form 1065 is used by a company for income tax purposes.

further testified that after the year 2000 Mr. Drago was not listed on any loan applications for IMW, did not personally guarantee any of those loans, and was not listed on credit applications, annual reports, or bank accounts or bank signature cards for IMW. Mr. Drago was paid by IMW as a contract employee from 2003 to 2006 and did not participate in the management or operation of IMW during that time.

While Mr. Drago argues that the sale was not valid because no stock shares were transferred, there were no stock certificates in existence that could have been transferred. Further, the evidence established that Mr. Drago worked as an independent contractor for IMW after the time period that he sold his interest in IMW, and that he no longer received a Form K-1 from IMW after the 1999 tax year.

Pursuant to La. R.S. 12:1502(C), we find that this lawsuit was filed more than three years from the date the alleged act, omission, or neglect occurred, and we find no manifest error in the district court's judgment granting the defendants' peremptory exception raising the objection of prescription and/or preemption as to the shareholder derivative claims, and we affirm that portion of the judgment. However, as in this case no stock was issued, we find that acquisitive prescription does not apply to the business ownership claims, and we reverse that judgment as to the business ownership claims.[4] *Compare* **Thorne v. Phillips**, 95-352 (La. App. 5 Cir. 10/31/95), 663 So.2d 865, 868, writ denied, 95-3855 (La. 2/2/96), 666 So.2d 1098; **Thornton v. Thornton Farms, Inc.**, 87-297 (La. App. 3 Cir. 5/11/88), 526 So.2d 315, 320-321. As the first judgment dismissed all claims the second judgment, denying Mr. Drago's motion for partial summary judgment, is moot.

## CONCLUSION

For the foregoing reasons, the district court's judgment granting Mark Wilks' and IMW's peremptory exception raising the objection of prescription and/or preemption and dismissing Michael Drago's claims with prejudice is affirmed in

---

[4] Once the trial court ruled on the first judgment, dismissing all claims, the second judgment is moot.

part and reversed in part, the judgment denying Michael Drago's motion for partial summary judgment is found moot, and the case is remanded for further proceedings consistent with this opinion. The costs of the appeal are assessed against Michael Drago.

**FIRST JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; SECOND JUDGMENT FOUND MOOT; CASE REMANDED.**